Davis v Scottish Re Group Ltd. (2018 NY Slip Op 01889)





Davis v Scottish Re Group Ltd.


2018 NY Slip Op 01889


Decided on March 20, 2018


Appellate Division, First Department


Acosta, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 20, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. AcostaP.J.
Sallie Manzanet-Daniels
Peter Tom
Richard T. Andrias, JJ.


654027/13 15565 

[*1]Paul Davis, Plaintiff-Appellant,
v
Scottish Re Group Limited, et al., Defendants-Respondents, Jonathan Bloomer, et al., Defendants.



On remittitur from the Court of Appeals (30 NY3d 247 [2017]), plaintiff appeals from the order of the Supreme Court, New York County (O. Peter Sherwood, J.), as amended, entered on or about October 15, 2014, to the extent it dismissed the seventh, ninth and tenth causes of action for lack of standing.



Boies, Schiller & Flexner LLP, New York (Eric Brenner and Matthew Tripolitsiotis of counsel), Guzov, LLC, New York (Debra J. Guzov and David J. Kaplan of counsel), and Bolatti & Associates, New York (Silvia Bolatti of counsel), for appellant.
Schulte Roth & Zabel LLP, New York (Howard O. Godnick and Andrew D. Gladstein of counsel), for Cerberus Capital Management L.P. and SRGL Acquisition, LDC, respondents.
Mayer Brown LLP, New York (Jean-Marie L. Atamian and James Ancone of counsel), for Scottish Re Group Limited, Scottish Re (U.S.), Inc., Jeffrey Hughes, Larry Port and Raymond Wechsler, respondents.
Quinn Emanuel Urquhart & Sullivan LLP, New York (Jennifer J. Barrett and Joshua S. Margolin of counsel), for Massachusetts Mutual Life Insurance Company, respondent.



ACOSTA, P.J.


This matter was remitted to this Court by the Court of Appeals to determine whether plaintiff, an owner of ordinary shares in defendant Scottish Re Group, Limited (Scottish Re), a Cayman Island company, has standing to assert derivative claims against the company's directors and investors under Foss v Harbottle ([1843] 67 Eng Rep 189, 2 Hare 461) (Davis v Scottish Re Group Ltd., 30 NY3d 247 [2017]). Supreme Court dismissed the derivative causes of action on the ground that plaintiff did not establish standing under Cayman Islands law because he did not seek leave of court to commence a derivative action as required by Rule 12A of the Rules of the Grand Court of the Cayman Islands; the Court also found that plaintiff did not have standing because Cayman Islands common law does not allow derivative claims by individuals, with certain exceptions, as set forth in Foss. This Court modified on unrelated grounds. We agreed with Supreme Court that plaintiff's noncompliance with Rule 12A mandated the dismissal of the derivative claims (138 AD3d 230 [1st Dept 2016])[FN1]. The Court of Appeals, however, held that Rule 12A is a procedural rule and therefore does not apply in New York courts (30 NY3d at 253-254). We now conclude that plaintiff does not have standing under Foss, and we affirm the dismissal of the derivative causes of action on that ground.
Under Cayman Islands law interpreting Foss, "derivative claims are owned and controlled by the company, not its shareholders" Winn v Schafer, 499 F Supp 2d 390, 396 [SD NY 2007]). Thus, "a shareholder is not permitted to bring a derivative action on behalf of that company" (id.; see also Shenwick v HM Ruby Fund, L.P., 106 AD3d 638, 639 [1st Dept 2013]).
Cayman Islands law recognizes only four narrow exceptions to the Foss rule: "(1) if the conduct infringed on the shareholder's personal rights; (2) if the conduct would require a special majority to ratify; (3) if the conduct qualifies as a fraud on the minority; or (4) if the conduct consists of ultra vires acts (Winn, 499 F Supp 2d at 396). Here, the only exception at issue is the "fraud on the minority" exception. In order to invoke that exception, plaintiff must plead and prove that the alleged wrongdoers controlled a majority of the stock with voting rights and that those wrongdoers committed fraud (id.). Control may be sufficiently pleaded by showing that the wrongdoers own a majority of the corporation's voting shares or have acquired de
facto control of those voting shares (id. at 396-397).
We agree with the motion court that the complaint is devoid of any allegations establishing either form of control. As an initial matter, the court noted that "the Complaint does not allege that the Scottish Re directors individually held a controlling share of voting rights in Scottish Re." The court noted further that plaintiff admits in the complaint that the Investors (not the directors of Scottish Re) collectively acquired a majority of Scottish Re's voting shares in 2007 and held these shares until April 2011 when they acquired complete ownership of Scottish Re's ordinary shares in the merger [FN2]. In fact, each of the directors beneficially owned less than [*2]1% of Scottish Re's ordinary shares as of May 11, 2011, and all of the directors and officers of the company collectively owned a grand total of 3.6% of Scottish Re's ordinary shares as of that date. As the court concluded, "These facts necessarily imply that the Scottish Re's Directors did not have "[control"' over a majority of the stock with voting rights during this period."[FN3]
On appeal, plaintiff argues that the directors and Investors acted in concert, which allowed the directors to obtain de facto control over a majority of voting shares. However, plaintiff does not identify a single factual allegation in the complaint that supports his position that the Scottish Re directors controlled the company's voting shares.
That some of the directors were nominees of the Investors is of no moment inasmuch as it does not establish that the directors influenced or directed the Investors in voting their shares. As Supreme Court held, these facts are legally irrelevant. Indeed, a director does not obtain control of a majority shareholder's voting shares merely because the majority shareholder employs him or her or appoints him or her to the company's board of directors (see Winn, 499 F Supp 2d at 398).
Plaintiff also failed to allege facts sufficient to satisfy the second prong of the Foss rule, that is, that any of the directors engaged in fraud. Fraud is not present unless the alleged wrongdoer benefitted at the expense of the company (id. at 396; Shenwick v HM Ruby Fund, [*3]L.P., 106 AD3d 638, 639 [1st Dept 2013], supra).
The motion court correctly found the fraud on the minority exception inapplicable here because "[t]here are no allegations that the Scottish Re Directors benefit[ed] themselves at the expense' of Scottish Re."
With respect to count 7, plaintiff alleges in conclusory fashion that the directors "wasted" corporate assets in connection with their evaluation of . . . two transactions (i.e., the merger and the Orkney Unwind)[FN4]. However, there are no factual allegations that this conduct was undertaken by the directors to divert corporate assets or secure any financial profit for their personal benefit (Feiner Family Trust v VBI Corp, 2007 WL 2615448, *6, 2007 US Dist LEXIS 66916, *19-20).
With respect to counts 9 and 10, plaintiff alleges that the directors breached their fiduciary duties by allowing the Orkney Unwind to occur. However, Cerberus purchased the notes on the secondary market, not from Scottish Re. Thus, the purchase and subsequent sale of these notes was not at the expense of Scottish Re. Nor is there any allegation that any of the directors benefitted from the repurchase of the notes.
Given the lack of factual allegations that the directors engaged in any self-dealing, plaintiff argues that the directors benefitted by conspiracy. Absent factual support, however, this claim also fails. Plaintiff's reliance on Daniels v Daniels ([1978] C. 406, 408 [Eng Ch 1977]), is also unavailing. That case did not address, let alone endorse, plaintiff's "benefit-by-conspiracy" theory. In Daniels, the court merely refused to conclude prior to discovery that one director had not benefitted from an egregious case of self-dealing where it was alleged that he and his wife were the sole directors and controlling shareholders of a company and he had approved the sale of the company's land to his wife at a discount which she subsequently sold for a large profit. Here, however, there are no factual allegations that support a conspiracy.
Plaintiff also points to the fact that 6 of the 10 Scottish Re directors were employed by or served as directors of Cerberus or Mass Mutual affiliated entities. Based on these facts, which were disclosed to all unaffiliated ordinary shareholders in the 2011 information statement issued by the company, plaintiff suggests that an inference should be drawn that these directors, who implemented safeguards for the benefit of ordinary shareholders, stood to benefit at the expense of Scottish Re with respect to these transactions. However, these unsupported suggestions are insufficient.
Plaintiff also argues that if the control requirement produced an unconscionable result, the European Convention on Human Rights would operate to require Cayman courts to allow the claim to go forward under the so-called fifth exception based on interest of justice. Plaintiff, however, has offered no Cayman Island case in support of this position (see City of Harper Woods Empls. Retirement Sys. v Oliver, 589 F3d 1293, 1304 [DC Cir 2009] ["Finally, Harper Woods has not proven the existence of an interest of justice' exception to the Foss rule"]; In re Tyco Intl., Ltd., 340 F Supp 2d 94 [D NH 2004 Barbadoro, Ch.J.] [the court "share[d] the skepticism . . . about the viability of a distinct interests of justice exception"]).
Accordingly, upon remttitur from the Court of Appeals (30 NY3d 247 [2017]), the order of the Supreme Court, New York County (O. Peter Sherwood, J), as amended, entered on or about October 15, 2014, to the extent it dismissed the seventh, ninth and tenth causes of action for lack of standing, should be affirmed, without costs.
All concur.
Order Supreme Court, New York County, (O. Peter Sherwood, J.), as amended, entered on or about October 15, 2014, affirmed, without costs.
Opinion by Acosta, P.J. All concur.
Acosta, P.J., Manzanet-Daniels, Tom, Andrias, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 20, 2018
CLERK



Footnotes

Footnote 1:The facts are recited in full in our 2016 decision.

Footnote 2:On January 28, 2011, the Investors proposed to acquire all outstanding Scottish Re ordinary shares in a merger under Cayman law for $0.21 a share. After receiving the offer, the board of directors of Scottish Re formed a special committee comprised of directors Chapman, Butler, Hughes, and Joyal to review the offer. The special committee retained legal and financial professionals and as a result of negotiations with the Investors obtained a 43% increase in the offer price to $0.30 per ordinary share. After Scottish Re circulated an information statement, the merger was approved by a majority of the unaffiliated ordinary shareholders, and closed on August 24, 2011 in New York. Plaintiff did not exercise his right under Cayman law to dissent and obtain an appraisal.

Footnote 3:By letter dated February 13, 2018 plaintiff submitted a copy of Top Jet Enterprises Ltd. v Sino Jet Holding Ltd, a January 2018 Caymen Island decision issued by a lower court, in support of his argument that he sufficiently pleaded the element of control. We find Top Jet to be inapposite inasmuch as the wrongdoers (brother and sister) controlled the shares and board of directors of Sino Jet. Specifically, 50% of Sino Jet's shares were owned by Skyblueocean Ltd (Skyblue), which was owned by the siblings. The brother was also the sole director of Skyblue, and Skyblue appointed three members of Sino Jet's six-member board of directors, including the brother. Moreover, an affirmative vote by a majority of Sino Jet's board was required before Sino Jet could commence a lawsuit against Jet Midwest, a company fully owned and controlled by the siblings, for breaching a contract that Jet Midwest had with Sino Jet. Under these circumstances, an inference could be drawn that since the brother controlled 50% of Sino Jet, and Sino Jet needed an affirmative vote of the majority of its board to sue Jet Midwest (fully controlled by the siblings), Sino Jet would never sue Midwest for breach of a consignment agreement.

Footnote 4:In 2005, to raise funds, Orkney Holdings, LLC was formed as a subsidiary of SRUS. Orkney entities issued and sold to unaffiliated third parties a series of floating rate notes in a private offering, and a block of policies was transferred from SRUS to Orkney Re (the Orkney Block). In 2011, Scottish Re entered into agreements to unwind the Orkney structure through a recapture of the Orkney Block for $590 million, the sale of the Orkney Block to a third party, and the contemporaneous discounted repurchase and cancellation by Orkney of the notes, including those held by Cerberus affiliates (the Orkney Unwind). Scottish Re claimed that, while this transaction would result in a decline in its book value by roughly $150 million, other benefits to Scottish Re and the Orkney entities, such as improvements in their regulatory capital structure, would offset the decline. Scottish Re disclosed the Orkney Unwind in the same information statement in which it disclosed the Merger, and the special committee evaluated and approved the Orkney Unwind.